UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

UNITED STATES OF AMERICA,          :

                                               :

           Plaintiff,                OPINION AND ORDER

                                             :

     -v.-                           14 Civ. 864 (GWG)

                                             :

H. ELLIOT WALES AND FANEE WALES,    :

                                             :

           Defendants.           :
--------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff the United States of America (the "Government") has moved for summary

judgment in this case, which seeks to reduce tax assessments against the defendant taxpayers to

judgment.[1]  For the following reasons, the Government's motion for summary judgment is

---

[1] Plaintiff the United States of America's Notice of Motion for Summary Judgment, filed
Sept. 30, 2016 (Docket # 56); Declaration of IRS Revenue Officer Karen Sun, filed Sept. 30,
2016 (Docket # 57) ("Sun Decl."); Local Civil Rule 56.1 Statement of Plaintiff the United States
of America, filed Sept. 30, 2016 (Docket # 58) ("Gov't Statement"); Notice to Pro Se Litigant
Who Opposes a Motion for Summary Judgment, filed Sept. 30, 2016 (Docket # 59);
Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, filed Sept. 30,
2016 (Docket # 61) ("Gov't Mem."); Defendant Wales Opposition to Government Motion for
Summary Judgment, filed Dec. 22, 2016 (Docket # 66); Defendants' Statement of Disputed
Material Facts, filed Dec. 22, 2016 (Docket # 67) ("Defs. Statement"); Opposing Affidavit of
Elliot Wales, Defendant Taxpayer Re: Plaintiff Summary Judgment Motion — Rule 56, filed
Dec. 22, 2016 (Docket # 68) ("Wales Aff."); Taxpayer Elliot Wales' Rule 56.1 Memorandum of
Law, filed Dec. 22, 2016 (Docket # 69) ("Defs. Opp'n"); Reply Memorandum of Law in Further
Support of Plaintiff's Motion for Summary Judgment, filed Feb. 2, 2017 (Docket # 73);
Supplemental Declaration of IRS Revenue Officer Karen Sun, filed Feb. 2, 2017 (Docket # 74)
("Sun Suppl. Decl."); Local Civil Rule 56.1 Response of Plaintiff the United States of America,
filed Feb. 2, 2017 (Docket # 75).

Defendants also filed three motions to strike papers filed by the Government, following
which defendants were permitted to file sur-reply papers.  See Notice of Motion to Strike
Portions of Plaintiff's Memorandum of Law (Docket #73), filed Feb. 8, 2017 (Docket # 76);
Supporting Affirmation of Taxpayer to Motion to Strike Portions of Government Memorandum
of Law (Docket #73), filed Feb. 8, 2017 (Docket # 77) ("1st Sur-Reply"); Defendant Elliot
Wales Notice of Motion to Strike Portions of Supplemental Declaration of IRS Revenue Officer

granted.

I. BACKGROUND

   A.  The Claims in this Case

   This case was brought by the Government, on behalf of the Internal Revenue Service

("IRS"), against defendants to obtain a judgment for outstanding federal tax liabilities —

initially, for tax years 2002 through 2008.  Complaint, filed Feb. 10, 2014 (Docket # 2)

("Compl."), ¶¶ 1, 7-19.  Since filing the complaint, however, defendants "fully paid tax years

2002, 2007, and 2008."  Gov't Mem. at 1 n.2.  Thus, the only tax years at issue are 2003, 2004,

2005, and 2006, for which the Government is seeking a total of $122,072.59 in unpaid taxes,

penalties and interest as of September 1, 2016.  Id. at 1 nn.1-2; accord Account Transcripts

---

Karen Sun (Docket #74), filed Feb. 8, 2017 (Docket # 78); Supporting Affirmation to Motion to
Strike Portions of IRS Revenue Officer Karen Sun's Declaration (Docket #74), filed Feb. 8,
2017 (Docket # 79) ("2d Sur-Reply"); Defendant Elliot Wales Notice of Motion to Strike
Response of Plaintiff's Statement of Material Facts — Rule 56.1 (Docket #75), filed Feb. 8,
2017 (Docket # 80); Supporting Affirmation of Pro Se Taxpayer Defendant to Strike Plaintiff
Docket #75 (Rule 56.1 Statement of Material Facts), filed Feb. 8, 2017 (Docket # 81) ("3d Sur-
Reply"); Letter from Michael J. Byars, filed Feb. 8, 2017 (Docket # 82); Letter from H. Elliot
Wales, filed Feb. 10, 2017 (Docket # 83); Memorandum of Law in Opposition to Defendants'
Motions to Strike, filed Feb. 17, 2017 (Docket # 85); Notice of Motion for Leave of Taxpayer
Defendant Wales to File Sur-Reply Brief to Plaintiff's Memorandum of Law (ECF #85), filed
Feb. 22, 2017 (Docket # 86); Responsive Sur-Reply Defendant Memorandum of Law in
Response to Government's Reply Memorandum (ECF #85), filed Feb. 22, 2017 (Docket # 87);
Letter from H. Elliot Wales, filed Feb. 24, 2017 (Docket # 89); Letter from Michael J. Byars,
filed Feb. 28, 2017 (Docket # 90); Letter from H. Elliot Wales, filed Mar. 2, 2017 (Docket # 91).
While defendants' motions to strike attack the reply papers filed by the Government on various
grounds, defendants cite no relevant case law in support of their motions.  The closest they come
to suggesting something improper in the Government's papers is to contend that the Government
should not have offered new evidence regarding certain tax years in their reply papers.  See, e.g.,
2d Sur-Reply at 1-2; 3d Sur-Reply at 2.  For the reasons described in section III.B and footnote 6
below, the Government acted properly in offering such evidence on reply because it responded
to a factual contention the defendants made in their opposition papers.  Accordingly, the
defendants' motions to strike are denied.

(attached to Sun Decl. as Ex. A) ("Transcripts"), at 0750, 0758, 0766, 0772.[2]  The Government

notes that interest will continue to accrue and that "statutory additions" may also become due

before the date judgment is entered.  See Gov't Mem. at 1 n.1.  Thus, the Government asks that

its motion "be understood to incorporate a request for [any] additional interest as well as for

statutory additions that will have accrued" through the date of judgment.  Id.

B.  Defendants' Failure to Respond Properly to the Government's Statement
Under Local Civil Rule 56.1

Under Local Civil Rule 56.1, a summary judgment movant is required to file a "concise

statement, in numbered paragraphs, of the material facts as to which the moving party contends

there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The responding party must

"include a correspondingly numbered paragraph responding to each numbered paragraph in the

statement of the moving party."  Local Civ. R. 56.1(b).  Both the movant and opposing party

must cite to admissible evidence to support each of their statements of material fact.  Local Civ.

R. 56.1(d).  Under Local Civ. R. 56.1(c), "[e]ach numbered paragraph in the statement of

material facts . . . will be deemed to be admitted for purposes of the motion unless specifically

controverted by a correspondingly numbered paragraph in the statement required to be served by

the opposing party."  Accord Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

Here, the Government submitted a statement under Local Civil Rule 56.1 that contained

_____

[2]  September 1, 2016, is the date listed as the "account status date" on the IRS transcript
pages attached to Sun's declaration and relied upon by the Government in reaching the
$122,072.59 total.  See Transcripts at 0750, 0758, 0766, 0772.  While Sun and the Government
state that their calculation of unpaid taxes for the relevant years is current as of January 19, 2015,
Sun Decl. ¶ 17; Gov't Mem. at 1 n.1, both nonetheless reference charges to defendants' accounts
after this date, Sun Decl. ¶¶ 49, 61 (showing charges for August 1, 2016, and August 22, 2016);
Gov't Mem. at 10, 11 (same); accord Transcripts at 0764, 0771.  The Court thus considers
September 1, 2016, as the date on which the Government calculated the total amount of unpaid
taxes, interest, and penalties.

95 numbered paragraphs. See Gov't Statement. While defendants filed a counterstatement that denied the truth of a number of those paragraphs, see Defs. Statement, defendants' counterstatement cites to no admissible evidence. Indeed, defendants provide no citations to evidence at all.[3] Thus, Local Civ. R. 56.1(c) dictates that all of the Government's statement be deemed admitted.

While a court is expected to give special consideration to pro se litigants, that doctrine does not apply here because Wales — as he himself has pointed out, see, e.g., Defs. Statement ¶¶ 111-116 — is an experienced attorney. See, e.g., Harbulak v. County of Suffolk, 654 F.2d 194, 198 (2d Cir. 1981) (lawyer proceeding pro se "cannot claim the special consideration which the courts customarily grant to pro se parties") (citation omitted); accord Cayo v. Sefceik, 2014 WL 5038056, at *3 (D. Conn. Oct. 8, 2014); Corsini v. Bloomberg, 2014 WL 2029178, at *14 (S.D.N.Y. May 15, 2014); see also Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001) (declining to construe pleading liberally because litigant was licensed attorney); Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) (plaintiff would not be "accord[ed] . . . the advantage of the liberal construction of his complaint normally given pro se litigants because he is a licensed attorney") (citation omitted). In fact, Mr. Wales claims expertise specifically in federal litigation. See Defs. Statement ¶ 113 (noting his chairmanship of the "Federal Court

---

[3] The only exceptions are defendants' references to a "Notice to Admit and government response. Rule 36." See Defs. Statement ¶¶ 24-26, 98; accord id. at 16-17 (referring repeatedly to "Admission #1A"). While defendants did not attach copies of the notice to admit and response to their motion papers, they were previously filed in the record. See Response to Defendants' Amended Requests for Admissions, dated Sept. 27, 2016 (attached as part of Docket # 70). The referenced "admission," id. at 4, does nothing to create a genuine issue of material fact inasmuch as the Government denied the request for an admission regarding the payments made by defendants in 2004 and the additional factual material furnished following that denial is entirely consistent with the declaration of Revenue Officer Sun, see Sun Decl. ¶ 64.

Committee" at the New York County Lawyers' Association).

The application of Local Civil Rule 56.1(c) by itself would require the granting of the Government's motion inasmuch as all the facts necessary for it to prevail are contained in its Rule 56.1 Statement. Nonetheless, a district court "has broad discretion to determine whether to overlook a party's failure to comply with local rules." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted). We will exercise our discretion here to examine the admissible evidence that defendants have submitted notwithstanding their failure to comply with Local Rule 56.1 because doing so has no effect on the outcome of the Government's motion.

C. Facts Defendants Do Not Purport to Dispute

In 2003, 2004, 2005, and 2006, the defendants timely filed their tax returns. Gov't Statement ¶¶ 22, 37, 47, 57; Defs. Statement ¶¶ 22, 37, 47, 57. At the time they filed their returns, however, they failed to pay the taxes they owed for any of these years. For tax year 2003, the IRS assessed $17,551.00 in taxes due.[4] Gov't Statement ¶ 23; Defs. Statement ¶ 23. For tax year 2004, the IRS assessed $29,476.41. Gov't Statement ¶ 38; Defs. Statement ¶ 38. For tax year 2005, the IRS assessed $14,994.52 and defendants claimed $3,590.00 in withholding credit. Gov't Statement ¶¶ 48, 49; Defs. Statement ¶¶ 48, 49. For tax year 2006, the IRS assessed $14,708.97 and defendants claimed $3,500.00 in withholding credit. Gov't Statement ¶¶ 58, 59; Defs. Statement ¶¶ 58, 59.

Defendants do not even purport to contest any of these assessments. Instead, the issue in this case centers on what payments defendants made toward their tax liabilities for these four tax

---

[4] An "assessment" is "essentially a bookkeeping notation" that is "made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." Laing v. United States, 423 U.S. 161, 170 n.13 (1976) (citing 26 U.S.C. § 6203).

years.  Apart from defendants's admission they "made a payment of $317.33 towards their 2006 taxes" on December 4, 2014, see Gov't Statement ¶ 63; Defs. Statement ¶ 63, the parties dispute what payments were made.

D.  IRS Tax Records

Essentially all the evidence offered by the Government regarding defendants' payments is derived from IRS "tax transcripts," which are described in detail by IRS Revenue Officer Karen Sun.  See generally Sun Decl.; Sun Suppl. Decl.  Copies of the defendants' transcripts are attached to Sun's declarations.

Sun has worked for the IRS as a Revenue Officer for 26 years.  Sun Decl. ¶ 1.  Sun described her familiarity and experience working with the IRS's Integrated Data Retrieval System ("IDRS") — the system that generates the tax transcripts — as well as her work on defendants' own account since May 12, 2012.  Id. ¶¶ 1-2.  The IDRS is the basis by which the IRS maintains account information for taxpayers for each taxable year.  Id. ¶ 3.  For these accounts, the IRS contemporaneously notes any transactions, payments, communications, and any other occurrence with taxpayers in the IDRS, with each occurrence type identified by a numeric code.  Id. ¶¶ 2, 4-6, 10.  These entries cannot be backdated.  Id. ¶ 7.  Information in the IDRS may be  retrieved in the form of a "literal transcript" which shows occurrence codes and a description of each occurrence, as well as a "'certified transcript' (also known as a 'Form 4340'), which omits the transaction code information."  Id. ¶ 8.  Sun attached to her declaration copies of literal and certified transcripts from the defendants' tax accounts for tax years 2003, 2004, 2005, and 2006.  Sun Decl. ¶ 16 n.1; Transcripts.

For tax year 2003, the IRS assessed $17,551.00 against defendants on May 31, 2004. Sun Decl. ¶ 19; Transcripts at 0742.  Defendants claimed $1,440.00 in withholding credits, but

the IRS later reduced that amount to $86.00 after determining that the defendants overstated their withholdings. Sun Decl. ¶ 20 & n.2; Transcripts at 0742, 0744. Thus, the effective amount owed on the initial IRS assessment was $17,465.00. Over the next 12 years, the IRS assessed an additional $11,857.69 in penalties, interest, and costs, while the defendants made a total of $6,879.65 in subsequent payments, for a net increase of $4,978.04 in the amount due. See Transcripts at 0742-49; Sun Decl. ¶¶ 19-30. This lead to an outstanding balance of $22,443.04 as of September 1, 2016. Transcripts at 0750; accord Sun Decl. ¶ 30.

For tax year 2004, the IRS assessed $29,476.41 against defendants on May 30, 2005. Sun Decl. ¶ 33; Transcripts at 0752. Defendants claimed $300.00 in withholding and paid $4,000.00 in estimated taxes, Sun Decl. ¶ 34; Transcripts at 0752, for a starting assessment balance of $25,176.41. Sun Decl ¶ 37. Over the next 11 years, defendants made no additional payments to this account and the IRS imposed penalties and interest totaling an additional $20,782.30. Transcripts at 0752-58; Sun Decl. ¶ 34-39. This lead to an outstanding balance of $45,958.71 as of September 1, 2016. See Transcripts at 0758; Sun Decl. ¶ 40.

For tax year 2005, the IRS assessed $14,994.52 on June 12, 2006, and the defendants claimed $3,590.00 in withholding credit, Sun Decl. ¶¶ 43-44; Transcripts at 0760, for an initial balance of $11,404.52, see Sun Decl. ¶ 47. Over the next 10 years, defendants made no payments toward this account and the IRS imposed penalties and interest on the original balance, totaling $8,786.93. Transcripts at 0760-66; Sun Decl. ¶ 46, 48-49. The balance due on this tax-year account was thus $20,191.45 as of September 1, 2016. Transcripts at 0766; Sun Decl. ¶ 50.

Finally, for tax year 2006, the IRS originally assessed $14,708.97 against defendants on June 4, 2007. Sun Decl. ¶ 53; Transcripts at 0768. Defendants claimed $3,500.00 in withholding credit. Sun Decl. ¶ 54; Transcripts at 0768. After an audit, the IRS assessed an

additional $8,117.98 in tax liability on June 2, 2008. Sun Decl. ¶ 56; Transcripts at 0770. Thus, the assessed balance for 2006 taxes, after the audit and taking into account withholding, was $19,326.95. In the nine years after defendants filed their return on April 15, 2007, defendants made a single $317.33 payment toward this tax year while the IRS imposed penalties and interest totaling $14,469.77, for a net increase of $14,152.44. See Transcripts at 0768-71; Sun Decl. ¶¶ 58-61. Thus, as of September 1, 2016, the remaining balance due on this account was $33,479.39. Transcripts at 0772; Sun Decl. ¶ 62.

The total amount due on the four tax years — that is, 2003, 2004, 2005, and 2006 — is $122,072.59 in unpaid taxes, penalties, interest, and other charges, as of September 1, 2016.

We discuss below defendants' arguments in opposition to the Government's motion and their evidence disputing the Government's contentions.

## II. LAW APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 59 (2d Cir. 2016).

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); accord Cmty. Health Care Ass'n of N.Y. v. Shah, 770 F.3d 129, 144 (2d Cir. 2014). Nevertheless, once the moving party has shown that there is no genuine issue as to any

8

material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a <u>genuine issue for trial</u>," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (emphasis in original) (citations and internal quotation marks omitted); <u>accord</u> <u>Wrobel v. County of Erie</u>, 692 F.3d 22, 30 (2d Cir. 2012), and "may not rely on conclusory allegations or unsubstantiated speculation," <u>Robinson v. Concentra Health Servs., Inc.</u>, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," <u>Anderson</u>, 477 U.S. at 256, and "[a] party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory," <u>Major League Baseball Props., Inc. v. Salvino, Inc.</u>, 542 F.3d 290, 310 (2d Cir. 2008) (citing <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2d Cir. 1996)).  "Where it is clear that no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment should be granted." <u>FDIC v. Great Am. Ins. Co.</u>, 607 F.3d 288, 292 (2d Cir. 2010) (internal quotation marks omitted) (quoting <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)).

III.  <u>DISCUSSION</u>

The sole issue on which the Government has sought summary judgment is its entitlement to a judgment against defendants for the tax assessments, penalties, interest, and other charges for tax years 2003, 2004, 2005, and 2006.  Gov't Mem. at 1 & n.2.

"The district courts of the United States at the instance of the United States shall have such jurisdiction . . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."  26 U.S.C. § 7402(a).  Thus, "[i]f a taxpayer is liable to the IRS, the Government may proceed in district court to obtain a judgment for the

amount assessed against the taxpayer."  United States v. Sweeny, 418 F. Supp. 2d 492, 496

(S.D.N.Y. 2006) (citing 26 U.S.C. § 7402(a)).

"It is well established that the IRS's tax calculations (including calculations of interest

and penalties) are presumptively valid and create a prima facie case of liability, such that the

Government is entitled to have the assessment reduced to judgment unless the taxpayer

overcomes the presumption by the IRS that the assessment is correct."  United States v. Chrein,

368 F. Supp. 2d 278, 282 (S.D.N.Y. 2005) (citation and internal quotation marks omitted), aff'd,

274 F. App'x 56 (2d Cir. 2008); accord Nassar Family Irrevocable Tr. v. United States, 2016

WL 5793737, at *12 (S.D.N.Y. Sept. 30, 2016); United States v. Martynuk, 2015 WL 328100, at

*4 (S.D.N.Y. Jan. 26, 2015).  Thus, "the burden is on the taxpayer to prove [an assessment's]

invalidity."  Pizzarello v. United States, 408 F.2d 579, 583 (2d Cir. 1969) (citations omitted);

accord Sweeny, 418 F. Supp. 2d at 496.  Additionally, "[t]o defeat a motion for summary

judgment, the taxpayer must not only show that the assessment is incorrect, but it must also

prove the correct amount of the tax."  Chariot Plastics, Inc. v. United States, 28 F. Supp. 2d 874,

882 (S.D.N.Y. 1998) (citing United States v. Janis, 428 U.S. 433, 440-41 (1976); and

O'Callaghan v. United States, 943 F. Supp. 320, 327 (S.D.N.Y. 1996)).  "To create a genuine

issue as to the amount of his tax liability, [the defendant] must point to specific evidence that

demonstrates the proper amount of his tax liability."  United States v. Graham, 2015 WL

1003458, at *3 (E.D.N.Y. Mar. 6, 2015) (alteration in original) (internal quotation marks

omitted) (quoting O'Callaghan, 943 F. Supp. at 327).  "Mere conclusory denials and bald

assertions [about the proper amount of tax liability] are insufficient to avoid summary

judgment."  O'Callaghan, 943 F. Supp. at 327 (internal quotation marks omitted) (quoting Schiff

v. United States, 1989 WL 119410, at *4 (D. Conn. Sept. 6, 1989), aff'd, 919 F.2d 830 (2d Cir.

1990)).

Courts in this circuit routinely consider IRS tax transcripts as competent evidence of tax liability.  See generally Malkin v. United States, 243 F.3d 120, 124 (2d Cir. 2001) (analyzing "IDRS literal transcript" and related codes in affirming district court decision); accord United States v. Chelsea Brewing Co., 2014 WL 4801330, at *4-5 (S.D.N.Y. Sept. 26, 2014) (admitting IDRS records where defendant "provided no reason to doubt" them and granting summary judgment based partly on IDRS records).  In fact, "[i]t is well established that a Form 4340 or a computer printout of a taxpayer's transcript of account, absent a showing of irregularity, provides sufficient verification of the taxpayer's outstanding liability."  Martynuk, 2015 WL 328100, at *5 (internal quotation marks omitted) (quoting McLaine v. Comm'r, 138 T.C. 228, 241 (2012)).

A.  Whether a Proper Foundation Has Been Laid for the Tax Transcripts

Defendants' primary objection to the Government's evidence is that the information in the tax transcripts regarding their payments should not be credited.  See, e.g., Defs. Statement ¶ 2 ("Defendant denies IRS accurately records on a contemporary basis each and every transaction, occurrence and event with respect to each and every individual or joint taxpayer since 1997.") (emphases omitted).  Defendants argue that the Government was required to offer an expert — preferably one from "M.I.T. or Stanford," see id. ¶¶ 1, 8 — to testify as to the accuracy and integrity of the IDRS.  See id. ¶¶ 1-2, 4-8, 12-17; Defs. Opp'n at 5; 2d Sur-Reply ¶ 5; 3d Sur-Reply at 3.  Defendants contend that the Government has the burden of showing that "the IRS retrieval system [is] 100% accurate," and that it "[n]ever suffer[s] a virus."  1st Sur-Reply ¶ 7.

We reject this argument.  The accuracy of the transcripts is attested to by Sun — a

Revenue Officer with decades of experience in the IRS who explained in detail how data is entered into and retrieved from the computer system. Sun Decl. ¶¶ 2-16. While her testimony relates to the operation of a computer system, this fact alone does not turn her testimony into an expert "opinion" within the meaning of Federal Rule of Civil Procedure 702. See generally United States v. Wilson, 408 F. App'x 798, 808 (5th Cir. 2010) ("[T]estimony about a computer may suggest technical expertise, but that does not necessarily mean such testimony requires satisfying the standard for expert testimony."). Rather, Sun has shown personal knowledge of the IDRS, how transactions are recorded in this system, what certain code notations mean, and the integrity of the system. Sun Decl. ¶¶ 2-16; Sun Suppl. Decl. ¶ 2.

Defendants argue that Sun cannot have sufficient familiarity with their accounts because she was the Revenue Officer assigned to them only since 2012. Defs. Statement at 19; Defs. Opp'n at 5; 2d Sur-Reply ¶¶ 1, 4. However, Sun's familiarity with IDRS allows her to establish that the records kept by the IRS are accurate, notwithstanding her lack of personal involvement in the defendants' particular accounts before 2012. See, e.g., United States v. Rozbruch, 28 F. Supp. 3d 256, 267 (S.D.N.Y. 2014) (recognizing that an "affidavit or testimony from an individual with . . . personal knowledge of what the IRS computer database reflects" is acceptable to validate IDRS records on summary judgment). Here, Sun demonstrates personal knowledge of the operations of the IDRS system — not merely of the transactions relating to defendants' accounts in the years since she began to work on their accounts. Such testimony has been routinely accepted in other cases and we see no reason to not accept Sun's testimony here. Defendants' suggestion that an IRS system may suffer from a virus, 1st Sur-Reply ¶ 7, is mere speculation and thus would not provide a basis on which a reasonable juror could discredit these records.

B.  Whether Defendants Have Rebutted the Evidence Regarding Their Payments

Apart from their attack on the consideration of the tax transcripts, defendants argue more specifically that summary judgment cannot be granted because there is a factual dispute as to what payments they made toward their tax liabilities for the four years at issue.  See Defs. Statement ¶¶ 20, 24-26, 34, 35, 40-42, 44, 50-52, 54, 63, 66, 69, 77, 84, 87, 93-95.

Obviously, the presumption that surrounds the accuracy of tax transcripts is not irrebuttable.  Thus, in some instances, a taxpayer's offer of competent evidence contradicting the records of the IDRS system will create a factual dispute that must be resolved by a trier of fact. See, e.g., McConnell v. United States, 2017 WL 167917, at *4 (S.D.N.Y. Jan. 17, 2017).  In this case, however, defendants do not offer the kind of evidence that would allow a reasonable jury to conclude that the information in the tax transcripts regarding defendants' payments toward their tax liabilities is incorrect.

First, defendants attempt to rebut the accuracy of the transcripts by repeatedly stating that defendants "fully paid" the IRS for particular years, Defs. Statement, ¶¶ 24-26, 34, 35, 44, 50-52, 54, 69, 76, 77, 84, 93-95 (emphasis omitted), or that they "made" or "sent" a tax payment of $55,000.00 for tax years 2003 and 2004, see id. ¶ 20 ("taxpayer made $55,000 in tax payments" for 2004); id. ¶¶ 24-26 ("In year 2004 taxpayer sent IRS $55,000 in tax payments toward years 2003 and 2004.") (emphasis omitted); accord id. ¶¶ 35, 40-42.[5]  These statements, however, are

_____

[5] Elliot Wales submitted two statements that he identifies as being "under oath."  See Wales Aff. at 1; Defs. Statement at 1.  We note that these documents are not notarized and the mere statement that they are "under oath" does not conform to the requirements of 28 U.S.C. § 1746.  We will treat these statements as properly sworn, however, only because their consideration does not affect the outcome of this motion.  On a related point, defendants complain repeatedly that the Government did not rely on Elliot Wales's deposition in making their motion.  See, e.g., Defs. Statement at 10, 16, 19; Defs. Opp'n at 3, 4, 5; 1st Sur-Reply ¶¶ 3-4, 6; 2d Sur-Reply ¶ 2; 3d Sur-Reply at 1.  This argument is frivolous inasmuch as the

conclusory and thus do nothing to create an issue of material fact.  Moreover, they do not directly address the question at issue in this case.  The issue in this case is not whether defendants made payments in 2004.  Indeed, the IRS agrees that defendants made at least $45,000.00 in voluntary payments during calendar year 2004.  See Sun Decl. ¶ 64.

Rather, the dispute between the parties is whether the IRS correctly allocated the payments it received in 2004 to particular tax years.  For the $45,000.00 in voluntary payments made during 2004, the IRS applied $4,000.00 of these payments to tax year 2004 because they were identified by defendants as being payments of estimated tax for tax year 2004.  See Sun Decl. ¶¶ 64, 66-67.  The remaining $41,000.00 was applied to tax years 1997, 1998, 2002, and 2003 — all of which had outstanding tax liabilities at the time the payments were received in 2004.  See id. ¶¶ 64-84.

The reason why the IRS chose to apply the payments to these earlier years and not to 2004 is explained in the declaration of Revenue Officer Sun.  Sun notes that the IRS allows a taxpayer to identify to which year's account a payment should be made if the taxpayer has taxes owing on multiple years.  See id. ¶¶ 3, 11.  If the taxpayer so identifies his payment as toward a particular tax year, the IRS will honor that request.  Id. ¶ 11; accord Rev. Proc. 2002-26 § 3.01, 2002-1 C.B. 746.  If the taxpayer does not indicate the account to which the IRS should apply a payment, the IRS may apply it to the account "the IRS determines will serve the best interests of the United States."  Sun Decl. ¶ 12; accord Rev. Proc. 2002-26 § 3.02, 2002-1 C.B. 746.

Defendants contend that the payments they made in 2004 should have been credited exclusively to tax years 2003 and 2004 and not to other tax years.  They do not claim, however,

Government was under no obligation to rely on that deposition.

that they designated any of the payments for the 2003 or 2004 tax years. Rather, they argue that

it was improper to apply any such payments to tax years 1997, 1998, or 1999 because, by 1999,

they owed no prior-year taxes. See Defs. Statement ¶ 101 ("By year 1999, [defendants had]

fully paid taxes for years 1997, 1998 and 1999.") (emphases omitted). Thus, defendants argue

that, because they owed no taxes for tax year 1999 or earlier, every payment they made to the

IRS after that year should have been credited to post-1999 tax assessments. See Defs. Statement

¶¶ 50-52, 69, 76-77, 84, 87, 93-95, 101, 104. Defendants contend that their current balances for

tax years 2003-2006 arise from the IRS "erroneously transfer[ing]" to tax years 1997-1999

payments that should have been credited to tax years 2003-2006. See generally id. (emphasis

omitted); see also Defendants Answer to Complaint, filed Sept. 12, 2014 (Docket # 13), ¶ 5. As

described further below, however, defendants provide no non-conclusory evidence to support

these contentions.

Nonetheless, to rebut the defendants' claim, the Government put into the record tax

transcripts for the years 1997 through 1999. The tax transcripts show that defendants had not

fully paid their 1997 taxes until March 3, 2008. See generally Transcripts at 0354, 0683, 0685;

see also Sun Suppl. Decl. ¶ 21. Moreover, defendants' 1998 and 1999 taxes were never fully

paid. As of November 7, 2011, the 1998 tax year had a remaining $10,631.49 assessment

balance. See Transcripts at 0696. This balance was "written off" by the IRS because the

statutory collection period had expired. See id.; Sun Suppl. Decl. ¶¶ 18-19. Thus, the

Government is not attempting to collect on that liability in this case. Defendants never fully paid

their 1999 tax liability either. As of June 7, 2010, it had a remaining balance totaling

$10,362.51. See Transcripts at 0706. That balance was similarly written off by the IRS due to

the expiration of the statutory collection period. See id.; Sun Suppl. Decl. ¶¶ 18-19. In other

words, at the time defendants made payments to the IRS in calendar year 2004, the IRS tax records show that the defendants carried balances for tax years 1997, 1998, and 1999 to which the IRS could apply any non-designated voluntary payments from defendants.  See Sun Decl. ¶¶ 11-12.[6]

In light of this specific and detailed evidence regarding tax payments, defendants' conclusory statement that they owed no taxes as of 1999 would not allow a reasonable juror to conclude that, notwithstanding the payments shown on the tax transcripts, defendants in fact had fully paid their tax liabilities for calendar years 1997 through 1999 as of 2004, let alone as of 1999, the year defendants claim the liabilities were paid.  Essentially, the defendants' only evidence on this point is Elliot Wales' repeated contention that the closing of a 1998 loan used to purchase an apartment required that defendants pay "all [then] pending taxes," Defs. Statement ¶¶ 98-99, 101-102 (emphasis omitted), and that in 1999, defendants took a home equity line of credit, the closing of which required payment of "all [then] pending taxes," id. ¶¶ 100-102 (emphasis omitted).  Absolutely no other evidence is provided to support the contention that the defendants had fully paid their 1997-99 taxes as of 2004.[7]  Defendants provide no documents

---

[6]  The defendants raised the argument regarding the application of tax payments to calendar years before and including 1999 in their opposition papers.  See Defs. Statement ¶¶ 50-52, 69, 76-77, 84, 87, 93-95, 101, 104.  The Government provided the transcripts regarding some of these years in a reply declaration, to show that not all pre-2000 years were fully paid by 1999. See Sun Suppl. Decl.  The defendants responded to these submissions in their sur-reply submissions.  See 2d Sur-Reply at 1-2; 3d Sur-Reply at 2.  Notwithstanding defendants' complaints that the Government acted improperly, see, e.g., 2d Sur-Reply at 1-2; 3d Sur-Reply at 2, the Government in fact had no obligation to raise the defendants' factual defense in its own moving brief.

[7]  Defendants occasionally refer to the deposition of Elliot Wales as containing evidence relevant to this question, see Defs. Statement ¶¶ 102-103; Defs. Opp'n at 3, 4, 5; 1st Sur-Reply ¶¶ 3-4, 6; 2d Sur-Reply ¶ 2; 3d Sur-Reply at 1, but never actually quote from it or provide a copy.

from the closings of these loans showing the requirement that taxes be paid. Defendants do not offer records from bank accounts showing any tax payments in the 1997 to 1999 time period. There is no detail from the defendants as to what payments were made or in what amounts. Notwithstanding defendants' claims that the lenders would not have proceeded with the real estate loans unless defendants had paid all their income taxes, defendants do not suggest, let alone provide evidence, that the lenders were even on notice that the defendants actually had any tax liabilities at the time of the loan transactions. Notably, the tax transcripts themselves show that no lien was filed for tax years 1997 and 1998 until August 11, 2000. Transcripts at 0673, 0687. Tax year 1999 taxes were not even assessed until calendar year 2000. See id. at 0700. Thus, there is no evidence that the lenders would have been aware of any of the defendants' tax liabilities at the time of the loan transactions.

In the face of defendants' conclusory claim that they paid their taxes for the years 1997 through 1999, the IRS points to specific evidence regarding defendants' payments during that period. The 1997 tax year assessment was $26,550.17, but defendants paid only $1,750.00 as of the date they filed their return, leaving $24,800.17 of the assessment unpaid. See Sun Suppl. Decl. ¶ 15 (citing Transcripts at 0671). The only other payment credited toward defendants' 1997 taxes during the 1998 calendar year was a "$1,389.34 payment (via a credit of an overpayment) on July 10, 1998." See id. (citing Transcripts at 0671). During the 1999 calendar year, defendants made three additional payments totaling $6,157.00 toward their 1997 taxes but this still left more than $17,000.00 of the original assessment amount unpaid. See id. (citing Transcripts at 0672). Defendants did not fully pay their 1997 taxes until March 3, 2008, see id. (citing Transcripts at 0685); Transcripts at 0683-85, many years after the claimed real estate transactions.

For the 1998 tax year, the IRS assessed $22,247.00 in taxes but as of the filing of the 1998 tax return, defendants had paid only $2,483.00 in taxes toward that assessment. See Sun Suppl. Decl. ¶ 19 (citing Transcripts at 0687-88). Defendants' next payment toward that assessment was not until after the purported real estate transactions, on January 16, 2000, and consisted of a $3,000.00 payment. See id. (citing Transcripts at 0687-88). Defendants never paid their 1998 taxes and owe $10,631.49, an amount that the IRS is unable to collect due to the expiration of the statute of limitations. See id. (citing Transcripts at 0696 (reflecting write-off of $10,631.49)).

Defendants' tax return for the 1999 tax year was not due until April 15, 2000, after the real estate transactions. Regardless, defendants never paid $10,362.51 owing for that year, which is now uncollectible. See id. (citing Transcripts at 0706).

In light of this evidence, Elliot Wales's conclusory statements about the real estate transactions are not enough to raise a dispute of material fact as to taxes owed for tax years 1997 to 1999, or the proper allocation of subsequent payments. See generally Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ([M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (alterations and omissions in original) (internal quotation marks omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)); accord O'Callaghan, 943 F. Supp. at 327. As already noted, "[t]o create a genuine issue as to the amount of his tax liability, [the defendant] must point to specific evidence that demonstrates the proper amount of his tax liability." Graham, 2015 WL 1003458, at *3 (second alteration in original) (internal quotation marks omitted) (quoting O'Callaghan, 943 F. Supp. at 327). A conclusory statement that tax liabilities were paid because such was required by the terms of a loan cannot support a finding that particular payments were made that

18

satisfied the defendants' tax liabilities for those years. The failure of defendants' evidence to create a genuine issue of material fact is all the more plain given that it is the defendants' burden to show that the IRS tax transcripts are inaccurate. See, e.g., Martynuk, 2015 WL 328100, at *4; Sweeny, 418 F. Supp. 2d at 496; Chariot Plastics, 28 F. Supp. 2d at 881-82. A reasonable jury could not find that defendants had paid their tax liabilities in full as of 1999 — the premise of the defendants' defense.

We close by noting that, throughout defendants' opposition papers, defendants cite to Rozbruch, as support for their arguments. It appears that defendants rely on Rozbruch for the propositions that (1) the Government cannot collect only the unpaid original assessments and not "administrative fees," and (2) a Revenue Officer must testify from first-hand, personal knowledge about tax transactions without relying on tax transcripts. See Defs. Statement at 5, 6, 7, 18; Wales Aff. at 5, 6, 7; Defs. Opp'n at 2, 3, 4, 6; 1st Sur-Reply ¶ 2.

Rozbruch provides no support for the defendants' position. The only commonality between this case and Rozbruch is that in both cases the Government sought to reduce tax liabilities to judgment. See 28 F. Supp. 3d at 258, 268. The Government prevailed in Rozbruch and obtained a judgment that included "tax assessments, penalties, and interest." See id. at 262, 265, 268. Rozbruch thus does not support defendants' argument that the Government cannot seek penalties or interest. Moreover, Rozbruch is in line with other cases that apply the presumption of correctness afforded to IRS calculations of interest and penalty assessments. See, e.g., Chrein, 368 F. Supp. 2d at 282-83 ("It is well established that the IRS's tax calculations (including calculations of interest and penalties) are presumptively valid and create a prima facie case of liability . . . .").

Additionally — and contrary to defendants' argument otherwise — the Court in

Rozbruch accepted the sworn declaration of a Revenue Officer about the nature of the IDRS records and rejected defendants' unsupported arguments that the IDRS records were incorrect. 28 F. Supp. 3d at 267. As is true here, the Revenue Officer in Rozbruch gave a sworn statement about information that had been input by other individuals. See Supplemental Declaration of Revenue Officer Carolyn J. Fields, United States v. Rozbruch, No. 11 Civ. 6965 (Docket # 54), ¶¶ 10, 12, 14, 16. Rozbruch accepted the Revenue Officer's testimony and the IDRS records, and rejected the defendants' efforts to contradict entries in the IDRS system because the defendants had not supplied an affidavit from someone with "personal knowledge" that the records were incorrect. See 28 F. Supp.3d at 267. Rozbruch thus reinforces the principle that IDRS records cannot be rebutted on a summary judgment motion by unsupported assertions that they are incorrect. See id.

IV. CONCLUSION

For the foregoing reasons, defendants have not raised any issues of material fact on the issue of their tax liability for tax years 2003, 2004, 2005, and 2006. Accordingly, the Court grants the Government's summary judgment motion (Docket # 56) to reduce the defendants' outstanding tax liabilities to judgment. Because there may be accumulation of interest or penalties since September 1, 20016, the Government is given leave to provide a proposed judgment for an amount that differs from the $122,072.59 figure sought in the summary judgment motion provided it is accompanied by evidence and argument that would support any additional amounts requested. In the alternative, the Government may seek a judgment for $122,072.59 plus a specific amount that accrues per day in interest up until the date judgment is entered provided the request is accompanied by argument justifying the accumulation of additional interest.

The proposed judgment shall be submitted within 14 days. Any response by defendants may be submitted within 7 business days thereafter.[8]

SO ORDERED.

Dated: July 11, 2017
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[8] If the Government is willing to forgo seeking a judgment for the additional amounts, it may so state in a letter filed within 7 days of the filing of this Opinion. In such event, judgment will be entered in the amount of $122,072.59 as of September 1, 2016, without further briefing.